**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DISTRIBUTED MEDIA SOLUTIONS, LLC, | |
| Plaintiff, | |
| v. | C.A. NO. 22-1353-GBW |
| CURIOSITYSTREAM INC., | |
| Defendant. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................................... 1

II.    SUMMARY OF ARGUMENT ..................................................................................... 1

III.   NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

IV.    STATEMENT OF FACTS ............................................................................................. 2

V.     LEGAL STANDARD .................................................................................................. 2

VI.    ARGUMENT .............................................................................................................. 3

   A.   DMS Has Sufficiently Alleged Direct Infringement of the '811 Patent............................. 3

   B.   DMS Sufficiently Alleged Direct Infringement of the '922 Patent..................................... 8

   C.   DMS Sufficiently Alleged Direct Infringement of the '714  Patent.................................. 11

   D.   DMS Plausibly Alleged Direct Infringement of the '004 Patent....................................... 14

   E.   DMS Sufficiently Alleged Direct Infringement of the '672 Patent.................................... 17

   F.   In The Alternative, Leave Should Be Granted To The Extent The Motion Is Granted..... 20

VII.   CONCLUSION........................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015)........................................................................ *passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................2

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................2

*Bench Walk Lighting LLC v. LG Innotek Co.*,
  530 F. Supp. 3d 468 (D. Del. 2021).................................................................20

*BioMérieux, S.A. v. Hologic, Inc.*,
  C.A. No. 18-21 (LPS), 2018 WL 4603267 (D. Del. Sept. 25, 2018)......................5, 10, 16, 18

*Blue Spike LLC v. Comcast Cable Commc'ns, LLC*,
  No. CV 19-159-LPS-CJB, 2019 WL 4242930 (D. Del. Sept. 6, 2019).................................14

*Bos. Sci. Corp. v. Nevro Corp.*,
  415 F. Supp. 3d 482 (D. Del. 2019).................................................................11

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) ........................................................................6, 12

*DermaFocus LLC v. Ulthera, Inc.*,
  201 F. Supp. 3d 465 (D. Del. 2016).................................................................5, 10, 16, 18

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
  888 F.3d 1256 (Fed. Cir. 2018)........................................................................ *passim*

*Exelis Inc. v. Cellco P'ship*,
  No. CA 09-190-LPS, 2012 WL 5289709 (D. Del. Oct. 9, 2012) ......................................11, 12

*Golden v. Apple Inc.*,
  819 F. App'x 930 (Fed. Cir. 2020) .................................................................11

*Intell. Ventures I LLC v. Nikon Corp.*,
  935 F. Supp. 2d 787 (D. Del. 2013)..................................................................6, 10, 13, 17

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  No. CV 18-452-WCB, 2019 WL 330515 (D. Del. Jan. 25, 2019) .........................................5, 10, 16, 19

*K–Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
    714 F.3d 1277 (Fed. Cir. 2013)..............................................................................5, 10, 16, 18

*L.M. Sessler Excavating & Wrecking, Inc. v. Bette & Cring, LLC*,
    No. 16-CV-06534-FPG, 2017 WL 4652709 (W.D.N.Y. Oct. 17, 2017)..................................8

*McDermott v. Clondalkin Grp., Inc.*,
    649 F. App'x 263 (3d Cir. 2016) ............................................................................................14

*MG Freesites Ltd. V. ScorpCast LLC*,
    No. 20-1012-MFK, 2023 WL 346301 (D. Del. Jan. 20, 2023) ...............................................12

*N. Star Innovations, Inc. v. Micron Tech., Inc.*,
    No. CV 17-506-LPS-CJB, 2017 WL 5501489 (D. Del. Nov. 16, 2017)....................................8

*Nalco Co. v. Chem-Mod, LLC*,
    883 F.3d 1337 (Fed. Cir. 2018).................................................................................................3

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)..................................................................................................2, 3

*Portus Singapore Pte Ltd v. Simplisafe, Inc.*,
    2019 WL 6071180 (D. Del. Nov. 15, 2019) ...........................................................................12

*Promos Techs., Inc. v. Samsung Elecs. Co.*,
    No. CV 18-307-RGA, 2018 WL 5630585 (D. Del. Oct. 31, 2018)............................................6

*Robocast, Inc. v. Netflix, Inc.*,
    No. CV 22-305-RGA, 2022 WL 16921956 (D. Del. Nov. 14, 2022)............................ *passim*

*Shire ViroPharma Inc. v. CSL Behring LLC*,
    No. CV 17-414, 2019 WL 3546692 (D. Del. Aug. 5, 2019) ....................................5, 10, 16, 19

*Swirlate IP LLC v. Keep Truckin, Inc.*,
    No. CV 20-1283-CFC, 2021 WL 3187571 (D. Del. July 28, 2021).........................................14

*Synchronoss Techs., Inc. v. Dropbox, Inc.*,
    987 F.3d 1358 (Fed. Cir. 2021)...............................................................................................12

*TriDiNetworks Ltd. v. Signify N. Am. Corp.*,
    Civil Action No. 19-1063-CFC-CJB, 2020 WL 2839224 (D. Del. June 1,
    2020) .......................................................................................................................................20

*Viking Techs., LLC v. SquareTrade Inc.*,
    No. CV 20-1509-CFC-JLH, 2021 WL 7209514 (D. Del. Dec. 9, 2021)........................ *passim*

## I.       INTRODUCTION

Plaintiff Distributed Media Solutions, LLC ("**DMS**" or "**Plaintiff**") respectfully requests that the Court deny defendant CuriosityStream Inc.'s ("**CuriosityStream**" or "**Defendant**") motion to dismiss ("**Motion**"; ECF 17) DMS's amended complaint ("**AC**"; ECF 13) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, grant DMS leave to amend the AC.

## II.      SUMMARY OF ARGUMENT

The Court should deny CuriosityStream's Motion as DMS's claims are sufficiently pled. DMS has alleged direct infringement through actions performed by CuriosityStream and/or actions performed under its direction or control. Indeed, CuriosityStream's arguments can be boiled down to (1) misstatements of the law (particularly the holding in *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015)) and this Court's pleading standards; (2) mischaracterizations of alleged facts; and (3) omissions of allegations harmful to CuriosityStream.

Accordingly, DMS respectfully requests that the Court deny the Motion in its entirety, or grant leave to amend if any portion of the Motion is granted.

## III.     NATURE AND STAGE OF PROCEEDINGS

This is an action for direct patent infringement.  DMS filed the initial complaint ("**IC**"; ECF 1) against CuriosityStream on October 13, 2022.  DMS alleged direct infringement of six patents, U.S. Patent Nos. 6,697,811 ("'**811 patent**"); 7,133,922 ("'**922 patent**"); 7,739,714 ("'**714 patent**"); 8,046,672 ("'**672 patent**"); 8,122,004 ("'**004 patent**"); and 8,482,384. Defendant filed a motion to dismiss the IC on Jan. 26, 2023. DMS filed the AC on Jan. 12, 2023.

## IV.     STATEMENT OF FACTS

The AC asserts that CuriosityStream directly infringes at least one claim of each of the six patents either directly through CuriosityStream or through its direction and control of an Akamai Content Delivery Network ("**Akamai CDN**"). "CuriosityStream does this through its on-demand video streaming platform that ("**the Accused Product**") that enables its users to stream video content from multiple sources." AC at ¶ 41 (emphasis added). The Accused Product directly infringes on each of the six patents.

## V.      LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In evaluating a Rule 12(b)(6) motion to dismiss, courts must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (internal quotations and citations omitted).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required but the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal,* 556 U.S. at 663; *Twombly,* 550 U.S. at 555–56. This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that

discovery will reveal evidence of [the necessary element]." *Phillips,* 515 F.3d at 234 (quoting *Bell Atl. Corp,* 550 U.S. at 556).

The "Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (citation omitted). "A complaint need only give the defendant 'fair notice of what the [infringement] claim is and the ground upon which it rests.'" *Robocast, Inc. v. Netflix, Inc.*, No. CV 22-305-RGA, 2022 WL 16921956, at *1–2 (D. Del. Nov. 14, 2022) (citation omitted).

## VI.   ARGUMENT[1]

### A.   DMS Has Sufficiently Alleged Direct Infringement of the '811 Patent

Plaintiff has sufficiently pleaded direct infringement of at least claim 1 of the '811 patent through CuriosityStream's performance of the steps in the method claim, either on its own and/or through its direction or control of its implementation of an Akamai CDN.[2]

#### i.   DMS Has Sufficiently Alleged Direct Infringement Through Actions Performed by CuriosityStream and/or Actions Performed Under Its Direction or Control

The *Akamai* case plainly states that direct infringement is properly alleged where "all steps of a claimed method are performed by *or attributable* to a single entity." *Akamai Techs., Inc*, 797 F.3d at 1022 (emphasis added). Where another party's actions are attributable to the infringement, an entity is responsible for direct infringement where "that entity directs or controls others' performance[.]" *Id*.

CuriosityStream has misrepresented the language in DMS's AC. In the AC, DMS has unequivocally asserted infringement of a method claim in stating that CuriosityStream "has

---

[1] Defendant's Motion at n. 6 discusses a referenced "claim chart."  The reference to a claim chart was an inadvertent mistake as the detailed analysis was incorporated within the body of the AC.

[2] Defendant's citation to a joint enterprise is immaterial. Motion at 7, n. 7. DMS did not allege a joint enterprise.

directly infringed at least claim 1 of the '811 patent by *performing* all the limitations of that claim." AC at ¶ 47 (emphasis added). DMS has further clearly alleged that the infringement is performed by hardware and software systems that are at least owned or controlled by CuriosityStream. *Id.* at ¶ 48 ("Upon information and belief, the Defendant has licensed to use and exercises control over its use of the Akamai Content Delivery Network *to implement video streaming services*.") (emphasis added).  In addition, DMS has gone through each element of claim 1 of the '811 patent and explained in detail how each element is performed by the hardware and software systems that CuriosityStream owns and/or controls.  *Id.* at ¶¶ 47-55.  Defendant's feigned confusion at the discussion of hardware and software is surprising, given that DMS's allegations explain in great detail how those hardware and software systems, owned or otherwise controlled by Defendant, perform each of the steps of claim 1 of the '811 patent.

 Further, Defendant's argument that "licensing is the very opposite of 'condition[ing] participation … upon performance'" and that "the existence of hardware and software is, again, insufficient as a matter of law for direct infringement of a method claim," (Motion at 6-7) misses the mark. DMS has alleged that Defendant controls its implementation of an Akamai CDN, which Defendant licenses and uses to infringe at least claim 1 of the '811 patent. *See Akamai Techs., Inc.*, 797 F.3d at 1023-24 (defendant was liable where defendant "directs or controls" the third parties).

 DMS, based solely on its analysis of publicly available materials, has alleged that upon information and belief Defendant directs or controls its implementation of an Akamai CDN to follow specific steps at Defendant's command solely for Defendant's benefit. *See e.g.,* AC at ¶ 55 ("the CuriosityStream platform, through at least its use of the Akamai CDN, which upon information and belief is a licensed and controlled component of the CuriosityStream platform, along with the CuriosityStream client applications streams the selected content from the source

library to the user."); *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 468 (D. Del. 2016) ("the Third Circuit has held 'pleading upon information and belief [to be] permissible [w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control.'") (quotation omitted); *BioMérieux, S.A. v. Hologic, Inc.*, C.A. No. 18-21 (LPS), 2018 WL 4603267, at *4 (D. Del. Sept. 25, 2018) ("Plaintiffs cannot be charged with knowing, at the time they drafted their Complaint, non-public information they could only obtain after filing suit and obtaining discovery."); *K–Tech Telecomms., Inc. v. Time Warner Cable, Inc.,* 714 F.3d 1277, 1286 (Fed. Cir. 2013) ("A defendant cannot shield itself from a complaint for direct infringement by operating in such secrecy that the filing of a complaint itself is impossible.").

Accordingly, DMS has properly alleged that Defendant directly infringed at least claim 1 of the '811 patent where one or more elements may implicate CuriosityStream's own systems along with its direction or control of its application of an Akamai CDN. *See IOENGINE, LLC v. PayPal Holdings, Inc.*, No. CV 18-452-WCB, 2019 WL 330515, at *3 (D. Del. Jan. 25, 2019) ("direction or control" was adequately pled where the third party had to "follow the directions given by PayPal."); *Shire ViroPharma Inc. v. CSL Behring LLC*, No. CV 17-414, 2019 WL 3546692, at *6, n.3 (D. Del. Aug. 5, 2019) (direct infringement claim sufficiently pled where it alleged that the "alleged infringer performed all steps of the claimed method 'either personally or through another acting under his direction or control.'") (citation omitted).

### ii.  DMS Has Pleaded Facts Sufficient to Allege Direct Infringement

CuriosityStream, regardless of its seemingly petty and misleading characterization of the AC, has never asserted that it is not on notice of DMS's accusations of infringement with regard to at least claim 1 of the '811 patent.  A plaintiff is not required to "show how the accused products and features infringed[,]" instead, "fair notice" is found where "the complaint specifically identified the accused products and alleged that those products met each and every element of at

least one claim of the patents-in-suit." *Robocast, Inc.*, 2022 WL 16921956, at *1–2 (citation omitted).

And Defendant has not claimed that it does not have fair notice.[3] Accordingly, DMS has satisfied its burden to provide Defendant with fair notice of its direct infringement claim. *Viking Techs., LLC v. SquareTrade Inc.*, No. CV 20-1509-CFC-JLH, 2021 WL 7209514, at *4 (D. Del. Dec. 9, 2021), *report and recommendation adopted,* No. CV 20-1509-CFC/JLH, 2022 WL 611058 (D. Del. Jan. 5, 2022) (direct infringement allegations sufficient where defendants were put on "notice of the grounds on which Plaintiff's claims rest."); *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (fair notice was satisfied where the "complaint specifically identified the three accused products—by name and by attaching photos of the product packaging as exhibits—and alleged that the accused products meet "each and every element of at least one claim of the" patents); *Intell. Ventures I LLC v. Nikon Corp.*, 935 F. Supp. 2d 787, 795 (D. Del. 2013) (allegations sufficiently pled where "[f]or each patent-in-suit, plaintiffs describe the infringing products and include a specific example.").

The AC has provided Defendant with fair notice of the alleged infringement. Defendant's assertion that a plaintiff cannot satisfy its pleading requirements by "copy[ing] the language of a claim element, and then baldly stating (***without more***)" (Motion at 8; emphasis added and citation omitted) is misleading at best, and at worst a blatant mischaracterization.  For its support, it relies

---

[3] Defendant's claim that Plaintiff did not articulate why it is "plausible that the accused product infringes the patent claim" (Motion at 9; citation omitted) is a straw man. Plaintiff has put Defendant on fair notice of the alleged infringement. Defendant's caselaw is inapposite. *See e.g., Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021) (plaintiff did not allege direct infringement through direction or control and the "infringement claim [was] not even possible, much less plausible"); *Promos Techs., Inc. v. Samsung Elecs. Co.*, No. CV 18-307-RGA, 2018 WL 5630585, at *4 (D. Del. Oct. 31, 2018) (the infringing product was not identified and the plaintiff did not "allege how the accused infringing class of products infringe the asserted patents.").

solely on two elements of claim 1 of the '811 patent: the first is the claim's preamble and the second is the last element.  Both of these elements use clear, unambiguous language.

The preamble of claim 1 of the '811 patent states "[a] method for managing and distributing information with a system." AC at ¶ 47. CuriosityStream misrepresents DMS's allegations in paragraph 48 of the AC by falsely stating that DMS only repeats the language of this claim. Motion at 8. To the contrary, DMS further includes an image captured from CuriosityStream's own website which states that CuriosityStream allows a user to "Stream thousands of films, series, and shows. On demand, on any device, all around the world." AC at ¶ 48. This shows that CuriosityStream provides for the managing and distribution of information, such as video content, with a system, such as the accused CuriosityStream platform. DMS then concludes by stating that "CuriosityStream distributes video content through its CuriosityStream platform." *Id*. Even though this is just the preamble, DMS does far more than just recite the claim language.

CuriosityStream's additional misrepresentation with regard to paragraph 55 of the AC doesn't fare much better. For example, claim 1 of the '811 patent includes an element that recites "transmitting the data from the selected source server to the user." AC at ¶ 47. This claim element comes at the end and includes claim terms such as "data" and "source server," the analysis for which is covered in detail in previous claim elements that CuriosityStream does not complain about. DMS then includes an image showing the streaming of selected video content to the browser of a user. *Id*. at ¶ 55. After showing this, DMS states that the CuriosityStream platform "streams the selected content from the source library to the user." *Id*. Given the context of the plain language of the claim within the context of DMS's detailed discussion of previous claim steps, there is no confusion about what is being accused.

Moreover, DMS has filed a detailed 59 page, 131 paragraph AC explaining the alleged infringement with clear examples, explanations, and/or pictures for each and every claim. *See e.g.*, AC at ¶¶ 48-63; *see also id*. at ¶¶ 47, 49 (explaining that "receiving from a user at a multi-access manager a request for access to the system" takes place as "CuriosityStream has a login screen that allows a user to access the [Defendant's] platform that includes access to multiple video source libraries."). Plaintiff has more than satisfied its burden of putting Defendant on fair notice of the allegations in the AC. *Robocast, Inc.*, 2022 WL 16921956, at *1–2 (fair notice was found where the plaintiff identified the products and features and alleged "that the platform and its playlists satisfy each limitation of 'at least claim 1' of each of the asserted patents.") (citation omitted).[4] The facts have been more than sufficiently pleaded.

## B.  DMS Sufficiently Alleged Direct Infringement of the '922 Patent

Plaintiff has sufficiently pleaded direct infringement of at least claim 18 of the '922 patent through CuriosityStream's performance of the steps in the method claim, either on its own and/or through its direction or control of its implementation of an Akamai CDN.

### i.  DMS Has Sufficiently Alleged Direct Infringement Through Actions Performed by CuriosityStream and/or Actions Performed Under Its Direction or Control

Consistent with the holding in *Akamai*, DMS has sufficiently pleaded direct infringement. In the AC, DMS has unequivocally asserted infringement of a method claim in stating that

---

[4] Defendants caselaw is inapt. Motion at 8-9; *N. Star Innovations, Inc. v. Micron Tech., Inc.,* No. CV 17-506-LPS-CJB, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017), *report and recommendation adopted,* No. CV 17-506-LPS-CJB, 2018 WL 11182741 (D. Del. Jan. 3, 2018) (plaintiff did nothing more than repeat the language of the claim; the court made clear that "identifying what it is in the accused product . . . and/or pleading facts that explain why it is likely that the accused product has something that could be considered" infringement would have satisfied its pleading standard); *L.M. Sessler Excavating & Wrecking, Inc. v. Bette & Cring, LLC,* No. 16-CV-06534-FPG, 2017 WL 4652709, at *4 (W.D.N.Y. Oct. 17, 2017) (did not summarize the infringement and merely used "exactly—and entirely—its own patent language").

CuriosityStream "has directly infringed at least claim 18 of the '922 patent by ***performing*** all the limitations of that claim." AC at ¶ 66 (emphasis added). DMS has further clearly alleged that the infringement is performed by hardware and software systems that are at least owned or controlled by CuriosityStream. *Id.* at ¶ 67 ("Upon information and belief, the Defendant has licensed to use and exercises control over its use of the Akamai Content Delivery Network ***to implement video streaming services***.") (emphasis added). In addition, DMS has gone through each element of claim 18 of the '922 patent and explained in detail how each element is performed by the hardware and software systems that CuriosityStream owns and/or controls. *Id.* at ¶¶ 67-73. Defendant's feigned confusion at the discussion of hardware and software is surprising, given that DMS's allegations explain in great detail how those hardware and software systems, owned or otherwise controlled by Defendant, perform each of the steps of claim 18 of the '922 patent.

Further, CuriosityStream's argument that "DMS has made no such allegation" that DMS has not alleged that "any third parties are attributable to the accused infringer, either through direction or control," (Motion at 12) makes no sense. DMS has alleged that Defendant controls the implementation of an Akamai CDN, which Defendant licenses and uses to infringe at least claim 18 of the '922 patent. *See Akamai Techs., Inc.*, 797 F.3d at 1023-24 (defendant was liable where defendant "directs or controls" the third parties).

DMS, only using publicly available materials, has alleged that upon information and belief, Defendant directs or controls its implementation of an Akamai CDN to follow specific steps solely for Defendant's benefit. *See e.g.,* ¶ 71 ("the CuriosityStream platform, through at least its use of the Akamai CDN, which upon information and belief is a licensed and controlled component of the CuriosityStream platform, determines whether another edge server in the deployment exists from which the requested video content may be obtained."). This is sufficient to allege direct

infringement. *See DermaFocus LLC*, 201 F. Supp. 3d at 468; *see also BioMérieux, S.A.,* WL 4603267, at *4; *see also K–Tech Telecomms., Inc.,* 714 F.3d at 1286.

Accordingly, DMS has properly alleged that Defendant directly infringed at least claim 18 of the '922 patent where one or more elements may implicate CuriosityStream's own systems along with its direction or control of its application of an Akamai CDN. *See IOENGINE, LLC*, 2019 WL 330515, at *3 ("direction or control" theory of joint infringement was adequately pled where the third party had to "follow directions given by PayPal."); *see also Shire ViroPharma Inc.*, 2019 WL 3546692, at *6, n.3.

### ii.  DMS Has Pleaded Facts Sufficient to Allege Direct Infringement

CuriosityStream, again, has not asserted that it is not on notice of DMS's accusations of infringement with regard to at least claim 18 of the '911 patent. Accordingly, as Defendant inherently agreed that it has fair notice, DMS has satisfied its burden of providing Defendant with fair notice of the of its direct infringement claim. *See Viking Techs., LLC*, 2021 WL 7209514, at *4; *see also Disc Disease Sols. Inc.*, 888 F.3d at 1260; *see also Intell. Ventures I LLC*, 935 F. Supp. 2d at 795.

In an attempt to muddle the record, CuriosityStream insincerely accuses DMS of filing "bare recitations of the claim language followed by screen captures" from "Akamai's website" with "minimal effort to connect these block quotes to the claim language." Motion at 13 (citing AC at ¶¶ 74-78).  While CuriosityStream seemingly cites to the wrong paragraphs (noting that the images of the Akamai website are ¶¶ 68-72), it further ignores the language tying the images to the alleged infringement. *See e.g.,* ¶ 68-72. Indeed, as an example in paragraph 72, DMS ties "select[ing] between two or more gateways" to CuriosityStream's own usage "through at least its use of the Akamai CDN," to select "two or more edge servers that are possible sources of video

content by interrogating possible edge servers about the availability, *e.g.,* loading of the possible edge server . . .["5]

Moreover, DMS has provided Defendant with fair notice and a detailed element analysis of the infringed claims.  This analysis includes 17 paragraphs and 8 images to connect its '911 claim to the specifics of the '911 infringement. AC at ¶¶ 64-80. Indeed, Defendant has provided simple explanations for the infringing methods that Defendant has taken. *See e.g., Id.* at ¶¶ 66, 68 (explaining that Defendant locates "a plurality of gateways between said server and said clients, each said client being associated with one said gateway" by including "multiple edge servers that can be associated with a user based on their location."); *see Robocast, Inc.*, 2022 WL 16921956, at *1–2 (citation omitted).  DMS has satisfied its burden of putting CuriosityStream on fair notice.

### C.  DMS Sufficiently Alleged Direct Infringement of the '714  Patent

Plaintiff has sufficiently pleaded direct infringement of at least claim 1 of the '714  patent through CuriosityStream's implementation of a system that includes all of the elements of the '714 patent, including by direction and control of an Akamai CDN.

#### i.  DMS Has Plausibly Alleged Infringement of a System Claim

To allege direct infringement of a system claim, a claimant must "'use' a system for purposes of infringement, a party must put the invention into service, *i.e.,* control the system as a whole and obtain benefit from it."  *Exelis Inc. v. Cellco P'ship*, No. CA 09-190-LPS, 2012 WL

---

[5] Defendant's citations otherwise are inapplicable. *See* Motion at 13; *Golden v. Apple Inc.,* 819 F. App'x 930, 931 (Fed. Cir. 2020) (the complaint did not point "to any nonfrivolous allegations of infringement of any claim by any actual product made, used, or sold by any defendant" and instead supplied the Court with "claim charts" with a "dizzying array of disorganized assertions over  several hundred pages, disingenuously using the words of the claims to generally describe cryptically identified structures."); *Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 490 (D. Del. 2019) (defendant linked four documents totaling 144 pages to support its accusations without explaining "how any of the 144 pages of linked materials show such a connection.").

5289709, at *2 (D. Del. Oct. 9, 2012) (citation omitted). However, "[u]se . . .does not require physical control or possession of every component of the system." *Id*. (citing *Centillion Data Sys., LLC v. Qwest Communs. Int'l*, 631 F.3d 1279, 1284 (Fed.Cir.2011)).

DMS has alleged that Defendant has implemented "a system that includes all the limitations" of the '714 patent. AC at ¶ 83. The system includes Defendant implementing the system and controlling the system as a whole through its license and control of an Akamai CDN "to implement video streaming services." AC at ¶ 84. Therefore, it is irrelevant if "DMS relies, again, on the Akamai CDN, not the Accused Product[.]" Motion at 14. Defendant implements, controls, and benefits from the system as a whole. CuriosityStream has made a system that infringes and they sell and offer to sell the services on that infringing system. *See* AC at ¶¶ 82-96. These allegations are sufficient to allege direct infringement of a system claim. *See MG Freesites Ltd. V. ScorpCast LLC*, No. 20-1012-MFK, 2023 WL 346301, at *11 (D. Del. Jan. 20, 2023) (system claim validly pled where defendant "controls and directs the actions of the other" entities); *Exelis Inc.*, 2012 WL 5289709, at *2 (denying judgment on the pleadings where plaintiff alleged that the tests which infringed on the system patent occurred on third-party networks).[6]

### ii. DMS Has Pleaded Facts Sufficient to Allege Direct Infringement

Here, again, Defendant does not assert that it was not on fair notice of DMS's allegations. A plaintiff is not required to "show how the accused products and features infringed[,]" instead,

---

[6] Defendant's caselaw is irrelevant. *See* Motion at 14; *Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1368-69 (Fed. Cir. 2021) (dismissed on summary judgment as plaintiff limited claims to software residing on hardware and defendant merely supplied the software to use rather than using or controlling the use itself); *Portus Singapore Pte Ltd v. Simplisafe, Inc.*, 2019 WL 6071180, at *5 (D. Del. Nov. 15, 2019) (defendant did not use the claimed system, rather, plaintiff only described one user, the defendant's customer); *Bot M8 LLC*, 4 F.4th at 1354 (plaintiff pled facts that were inconsistent with the infringement claim; "While claim 1 requires that the game program and authentication program be stored together, separately from the motherboard, the FAC alleges that the authentication program is located on the PS4 motherboard itself.").

"fair notice" is found where "the complaint specifically identified the accused products and alleged that those products met each and every element of at least one claim of the patents-in-suit." *Robocast, Inc.*, 2022 WL 16921956, at *1–2 (citation omitted).

While CuriosityStream argues that the AC only alleges boilerplate allegations (Motion at 15), it ignores the fact that it is on notice of DMS's accusations of infringement of at least claim 1 of the '714 patent. This alone shows DMS satisfied its burden to provide Defendant with fair notice of its direct infringement claim. *See Viking Techs., LLC*, 2021 WL 7209514, at *4; *see also Disc Disease Sols. Inc.*, 888 F.3d at 1260; *see also Intell. Ventures I LLC*, 935 F. Supp. 2d at 795.

Although Defendant deceptively argues that "for seven of the eight claim limitations, it simply says 'the Accused Product, on information and belief, includes' that limitation" (Motion at 14-15; citing AC at ¶¶ 84-92), Defendant ignores the rest of AC's allegations. Indeed, as an example, paragraph 84 of the AC states that "the CuriosityStream client applications is a system that encodes and stores video content on a server computer for delivery to client computers on-line when requested" and accompanies a picture which states that the customer can "Stream thousands of films, series, and shows. On demand, on any device, all around the world." Likewise, paragraph 86 of the AC states that the "Accused Product implements MPEG-DASH" and then shows images and explanations of CuriosityStream's product implementing MPEG-DASH. Furthermore, paragraph 88 of the AC states that CuriosityStream's product "includes a processing unit for accepting a request by a client computer for on-line delivery of the object movie and for determining one or more data blocks to transmit based on a bandwidth associated with the client computer" and then explains the process with five images. DMS provides more than merely "little explanation." Motion at 14.

Moreover, while much of the explanation is detailed and extensive, Plaintiff made it simple and easy to understand through plain language. *See, e.g.,* AC at ¶ 91 ("As shown, CuriosityStream sends data blocks of video data to the computer to be reconstructed into the selected video content."); *id.* at ¶ 92 ("the CuriosityStream platform, through its client software implementations, includes a video playback implementation on the client computer for playing the reconstructed video content.").  Through 20 paragraphs (AC at ¶¶ 81-100), with a description and picture after nearly each paragraph, Plaintiff explained in detail how Defendant implements its infringing system, which, on information and belief, includes Defendant's implementation of an Akamai CDN, which is controlled by CuriosityStream, to infringe one or more claims of the '714 patent.

Accordingly, DMS has satisfied its burden of providing Defendant with fair notice of the of its direct infringement claim. *See Robocast, Inc.*, 2022 WL 16921956, at *1–2 (citation omitted).[7]

### D.  DMS Plausibly Alleged Direct Infringement of the '004 Patent

Plaintiff has sufficiently pleaded direct infringement of at least claim 1 of the '004 patent through CuriosityStream's performance of the steps in the method claim, either on its own and/or through its direction or control of its implementation of an Akamai CDN.

---

[7] Defendant's caselaw is distinguishable *or in DMS's favor*. *See* Motion at 15; *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) ("allegations based upon information and belief" were "solely within [defendant's] control" and provided "fair notice" as they were not "legal conclusions couched as factual allegations"); *Swirlate IP LLC v. Keep Truckin, Inc.*, No. CV 20-1283-CFC, 2021 WL 3187571, at *2 (D. Del. July 28, 2021) (failed to "allege facts showing how the accused product performs each step of each claim element"); *Blue Spike LLC v. Comcast Cable Commc'ns, LLC*, No. CV 19-159-LPS-CJB, 2019 WL 4242930, at *3 (D. Del. Sept. 6, 2019), *report and recommendation adopted*, No. CV 19-159-LPS-CJB, 2019 WL 11027620 (D. Del. Nov. 5, 2019) (the complaint attached an article "reviewing the product at issue" without explaining how that article connected to the claim and the court ordered that "[i]n amending their pleading (as the Court will permit . . . Plaintiffs should just state what are the facts that make them think" that the article explains their allegations).

### i. DMS Has Sufficiently Alleged Direct Infringement Through Actions Performed by CuriosityStream and/or Actions Performed Under Its Direction or Control

Again, consistent with the holding of *Akamai*, DMS has properly pleaded direct infringement. CuriosityStream has mischaracterized and misrepresented the language in DMS's AC. In the AC, DMS has unambiguously asserted infringement of a method claim in stating that the "Accused Product meets all the limitations of at least claim 1 of the '004 Patent." AC at ¶ 103. DMS has further plainly alleged that the infringement is performed by hardware and software systems that are at least owned or controlled by CuriosityStream. *Id.* at ¶ 104 ("Upon information and belief, the Defendant has licensed to use and exercises control over its use of the Akamai Content Delivery Network **to implement video streaming services**.") (emphasis added).  In addition, DMS has gone through each element of claim 1 of the '004 patent and explained in detail how each element is performed by the hardware and software systems that CuriosityStream owns and/or controls. *Id.* at ¶ 104-10.  Defendant's insincere confusion at the discussion of hardware and software is unexpected, given that DMS's allegations explain in great detail how those hardware and software systems, owned or otherwise controlled by Defendant, perform each of the steps of claim 1 of the '004 patent.

Similarly, Defendant's argument that CuriosityStreams' "license[] to use" and "control over its use" are insufficient to allege direct infringement (Motion at 16) fails to allege a true issue. DMS has alleged that Defendant controls its implementation of an Akamai CDN, which Defendant licenses and uses to infringe at least claim 1 of the '004 patent. *See Akamai Techs., Inc.*, 797 F.3d at 1023-24 (defendant was liable where defendant "directs or controls" the third parties).

Further, DMS has alleged, solely through publicly available materials, that Defendant performs all the limitations of claim 1 of the '004 claim or controls and/or directs an Akamai CDN to perform all the limitations of the claim. *See e.g.,* AC at ¶ 107 ("CuriosityStream streams video

content to a browser. Upon information and belief, the CuriosityStream platform, through at least its use of the Akamai CDN, which upon information and belief is a licensed and controlled component of the CuriosityStream platform, along with the CuriosityStream client applications sends the video content to the browser of a user's computer."); *see DermaFocus LLC*, 201 F. Supp. 3d at 468; *see also BioMérieux, S.A.,* 2018 WL 4603267, at *4; *see also K–Tech Telecomms., Inc.,* 714 F.3d at 1286; *IOENGINE, LLC*, 2019 WL 330515, at *3; *see also Shire ViroPharma Inc.*, 2019 WL 3546692, at *6, n.3.

### ii.  DMS Has Pleaded Facts Sufficient to Allege Direct Infringement

DMS has provided Defendant with fair notice through a detailed element analysis of the infringed claims. AC at ¶¶ 104-116. Indeed, although Defendant misleadingly argues that DMS repeats the claim language in paragraphs 103 and 105 as well as provides an image with no context, it ignores that paragraph 103 is a preamble of the '004 patent claim and paragraph 105 provides an example to further explain the image. *Id.* at ¶ 105 ("For example, the Accused Product provides functionality to allow the streaming of media content to the browser of certain computer operating systems."). Further, Defendant's citation to paragraphs 106-08 while stating "similar" ignores the multiple examples provided to explain the claim elements and images. *Id.* at ¶ 106 ("For example, the Accused Product provides the media content to the browser based on certain specific attributes, such as language and browser type."); *id.* ("For example, as shown, the CuriosityStream platform takes into account the browser type, operating system, and language in providing content to a user.")' *id.* at ¶ 107 ("For example, Curiosity streams video content to the browser of a computer."); *id.* ("For example, as show, CuriosityStream streams video content to a browser."); *id.* at ¶ 108 ("For example, the Accused Product has an "auto" setting for determining bandwidth."); *id.* ("Additionally, for example, the CuriosityStream platform takes into account operating system, language, and bandwidth in providing video content to a user.").

Furthermore, while Defendant argues that Plaintiff has failed to "identify which product, [and] which platform it is accusing," (Motion at 18) Defendant seemingly ignores much of the AC. *See e.g.,* AC at ¶¶ 41-42 (stating that the "Accused Product" is "Curiosity Stream, an on-demand video-streaming platform"); *id.* at ¶ 108 ("As in claim 1 of the '004 Patent, in the **Accused Product**, the one or more attributes include one or more of basic operating characteristics of the at least one network device, a language attribute, a bandwidth attribute, a firewall attribute, or a permissions attribute. For example, the Accused Product has an 'auto' setting for determining bandwidth.") (emphasis added); *see Robocast, Inc.,* 2022 WL 16921956, at *1–2 (emphasis added).

Accordingly, DMS has identified the alleged product, platform, and has alleged facts not within DMS's possession, on information and belief, that DMS implements an Akamai CDN through its direction or control. Defendant's argument that "[b]y failing to identify which product, which platform it is accusing, by failing to explain how that platform infringers, DMS fails to give such notice[,]" (Motion at 18) is egregiously deceiving. DMS has satisfied its burden to provide Defendant with fair notice of the of its direct infringement claim. *See Viking Techs., LLC,* 2021 WL 7209514, at *4; *Disc Disease Sols. Inc.*, 888 F.3d at 1260; *see also Intell. Ventures I LLC*, 935 F. Supp. 2d at 795.

### E.  DMS Sufficiently Alleged Direct Infringement of the '672 Patent

Plaintiff has plausibly alleged direct infringement of at least claim 1 of the '672 patent through CuriosityStream's performance of the steps in the method claim, either on its own or through its direction or control of its implementation of an Akamai CDN.

#### i.  DMS Has Sufficiently Alleged Direct Infringement Through Actions Performed by CuriosityStream and/or Actions Performed Under Its Direction or Control

Again, as throughout the AC, DMS has properly pleaded direct infringement. In the AC, DMS has unequivocally asserted infringement of a method claim in stating that CuriosityStream

"has directly infringed at least claim 1 of the '672 Patent by **performing** all the limitations of that claim." AC at ¶ 119 (emphasis added). DMS has further clearly alleged that the infringement is performed by hardware and software systems that are at least owned or controlled by CuriosityStream. *Id.* at ¶ 120 ("Upon information and belief, the Defendant has licensed to use and exercises control over its use of the Akamai Content Delivery Network **to implement video streaming services**.") (emphasis added).  In addition, DMS has gone through each element of claim 1 of the '811 patent and explained in detail how each element is performed by the hardware and software systems that CuriosityStream owns and/or controls.  *See Id.* at ¶¶ 117-130.

Defendant's argument that "[t]he existence of 'a product that is capable of executing the infringing method' is not enough" and that DMS has not shown that "every step of the claimed method has been practiced" (Motion at 18; citations omitted) mischaracterizes DMS's argument. DMS alleged that CuriosityStream controls the implementation of an Akamai CDN, which Defendant licenses and uses to infringe at least claim 1 of the '672 patent. *See Akamai Techs., Inc.*, 797 F.3d at 1023-24 (defendant liable where defendant "directs or controls" the third parties).

While Defendant argues that "DMS has failed to allege any fact to support Curiosity's direction or control over Akamai," (Motion at 19) Defendant ignores that DMS specifically stated that "[u]pon information and belief, the Defendant has licensed to use and exercises control over its use of the Akamai Content Delivery Network to implement video streaming services." AC at ¶ 120; *see also Robocast, Inc.*, 2022 WL 16921956, at *1–2 (citation omitted); *see also DermaFocus LLC*, 201 F. Supp. 3d at 468; *see also BioMérieux, S.A.*, 2018 WL 4603267, at *4; *see also K–Tech Telecomms., Inc.*, 714 F.3d at 1286 (Fed. Cir. 2013).

The Akamai CDN can only infringe a claim of the patent and impart benefits from its infringement by complying with the directions given by Defendant. Therefore, DMS has properly

alleged that CuriosityStream directly infringed at least claim 1 of the '672 patent where one or more elements may implicate CuriosityStream's own systems along with its direction or control of its application of an Akamai CDN. *See IOENGINE, LLC*, 2019 WL 330515, at *3 ("direction or control" theory of joint infringement was adequately pled where the third party had to "follow directions given by PayPal."); *see also Shire ViroPharma Inc.*, 2019 WL 3546692, at *6, n.3.

### ii.  DMS Has Pleaded Facts Sufficient to Allege Direct Infringement

Again, CuriosityStream does not assert that it is not on notice of DMS's accusations of infringement with regard to at least claim 1 of the '672 patent. DMS has provided Defendant with fair notice through a detailed element-by-element analysis of the infringed claims. AC at ¶¶ 117-130. Indeed, while Defendant argues that Plaintiff has failed to identify the facts supporting its claim, other than through information and belief, it doesn't identify why or how Defendant is not on fair notice of the allegations in the AC. Defendant has specified what the Accused Product was, and alleged in excruciating detail, with pictures, each and every claim of the patents-in-suit. *See Viking Techs., LLC*, 2021 WL 7209514, at *4; *see also Disc Disease Sols. Inc.*, 888 F.3d at 1260.

Defendant's arguments that DMS merely provides "conclusory assertions and a hodgepodge of screen captures," seemingly ignores the preamble to the alleged '672 patent claim in ¶ 119, (Motion at 19; omitting AC at ¶ 119) which states in part that the Accused Product receives "an indication over a network, in response to a request for access to a rich media presentation by an internet browser on a network device, that the internet browser on the network device has requested access to the rich media presentation;" which is explained not only by the images, but by the literal explanations within the images. *See e.g.,* AC at ¶ 120 ("The DASH Client may use metadata provided in the MPD for the selection of media components by communication with the media streaming application."). Further, Defendant's argument related to ¶ 122 of the AC seemingly not only omits the differing language in ¶ 119, but the literal last line of the paragraph

19

that explains the images below it. *Id.* at ¶ 119 ("[f]or example, the Accused Product sends video to the browser that is selected based on detected attributes."). The AC has provided Defendant with fair notice of the alleged infringement. Defendant's omissions and mischaracterizations has not changed that. *See Robocast, Inc.*, 2022 WL 16921956, at *1–2 (citation omitted).

### F. In The Alternative, Leave Should Be Granted To The Extent The Motion Is Granted

Pursuant to the Federal Rules of Civil Procedure, "[t]he court should freely give leave when justice so requires. *See* Fed. R. Civ. P. 15(a)(2). Accordingly, as Plaintiff's claims have not previously been held as deficient, to the extent the Court grants Defendant's Motion, Plaintiff respectfully request leave to file a further amended complaint. *See Bench Walk Lighting LLC v. LG Innotek Co.*, 530 F. Supp. 3d 468, 473, 494 (D. Del. 2021) (granting leave to further amend complaint in a patent infringement action); *see also TriDiNetworks Ltd. v. Signify N. Am. Corp.*, Civil Action No. 19-1063-CFC-CJB, 2020 WL 2839224, at *5 (D. Del. June 1, 2020) (same).

## VII. CONCLUSION

For the reasons stated above, DMS respectfully requests that this Court deny Defendant's motion to dismiss DMS's AC. In the alternative, DMS requests leave to amend its complaint.

Dated:  February 9, 2023                    Respectfully submitted,

By:

*/s/ Stamatios Stamoulis*
Stamatios Stamoulis (#4606)
Richard C. Weinblatt (#5080)
STAMOULIS & WEINBLATT LLC
800 N. West Street, Third Floor
Wilmington, DE 19801
Telephone: (302) 999-1540
Facsimile: (302) 762-1688
stamoulis@swdelaw.com
weinblatt@swdelaw.com
Mark S. Raskin
Michael S. DeVincenzo
Daniel C. Miller
KING & WOOD MALLESONS LLP
500 5th Avenue, 50th Floor
New York, New York 10110
(212) 319-4755
mark.raskin@us.kwm.com
michael.devincenzo@us.kwm.com

*Attorneys for Plaintiff*
*Distributed Media Solutions, LLC*